The **PEOPLE** of the State of
Colorado, Complainant

v.

**Timothy John MARTIN, Respondent.**

**Nos. 08PDJ063, 08PDJ094.**

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

July 1, 2009.

Attorney Regulation. Following a default sanctions hearing pursuant to C.R.C.P. 251.5(b), the Presiding Disciplinary Judge disbarred Timothy John Martin (Attorney Registration No. 09083) from the practice of law, effective August 1, 2009. Respondent engaged in a pattern of misconduct in several patent and trademark matters, which included the knowing conversion of client property. The facts admitted by default proved multiple violations of Colo. RPC 1.1, 1.3, 1.4(a), 1.4(b), 1.16(a) and 8.4(c). Respondent failed to answer the complaints or otherwise participate in these proceedings and therefore also failed to present any mitigating evidence. Accordingly, the Presiding Disciplinary Judge found no adequate basis to depart from the presumptive sanction of disbarment.

## DECISION AND ORDER IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(c)

On April 28, 2009, the Presiding Disciplinary Judge ("the Court") held a Sanctions Hearing pursuant to C.R.C.P. 251.15(b). Margaret B. Funk appeared on behalf of the Office of Attorney Regulation Counsel ("the People") and Timothy John Martin ("Respondent") failed to appear. The Court now issues the following "Decision and Order Imposing Sanctions Pursuant to C.R.C.P. 251.19(c)."

1. See *People v. Richards,* 748 P.2d 341, 346 (Colo. 1987).

2. *See* the People's complaints in 08PDJ063 and 08PDJ094 for further detailed findings of fact.

## I. *ISSUE*

Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client. Respondent engaged in a pattern of misconduct, which included the knowing conversion of client property. Respondent failed to answer the complaints or otherwise participate in these proceedings. What is the appropriate sanction for his misconduct?

*SANCTION IMPOSED:* **ATTORNEY DISBARRED**

## II. *PROCEDURAL HISTORY*

The People filed complaints in this consolidated matter on July 30, 2008 (08PDJ063) and October 8, 2008 (08PDJ094). Respondent failed to answer either complaint and the Court granted a motion for default in the consolidated matter on January 9, 2009. Upon the entry of default, the Court deems all facts set forth in the complaints admitted and all rule violations established by clear and convincing evidence.[1]

## III. *ESTABLISHED FACTS AND RULE VIOLATIONS*

The Court hereby adopts and incorporates by reference the factual background of this case fully detailed in the admitted complaints.[2] Respondent took and subscribed the Oath of Admission and gained admission to the Bar of the Colorado Supreme Court on September 29, 1978. He is registered upon the official records, Attorney Registration No. 09083, and is therefore subject to the jurisdiction of the Court pursuant to C.R.C.P. 251.1.[3]

### *Background*

Respondent represented clients in patent and trademark cases both in the United States and overseas. Generally, these types of cases required Respondent to arrange for counsel in other countries to ensure the pro-

3. The Court takes judicial notice of the fact that the Colorado Supreme Court immediately suspended Respondent from the practice of law pursuant to C.R.C.P. 251.8 on July 18, 2008.

tection of patents overseas. Respondent's work on these cases includes paying maintenance fees and meeting application deadlines for his institutional clients. Respondent's clients provided him funds to pay these fees and complete applications for submission on their behalf.

In the summer of 2007, Respondent's partner, Michael Henson, left the firm and opened his own practice. Due to a lack of communication with Respondent, a number of clients decided to transfer their matters to Mr. Henson's firm. Correspondence was sent to Respondent indicating his clients' wishes to transfer their case to other counsel, but Respondent failed to turn over or make available these clients' files.

Since approximately October 2007, Respondent's presence at his office address has been infrequent and sporadic. Respondent's office telephone and facsimile lines have been shut off, as well as his home and cellular phones.

Respondent is part owner of the office building in which his law office is located. Between January 2008 and May 2008, Dr. Richard Wihera, co-owner of the office building, received Respondent's office mail because there was no one in Respondent's locked office to receive the mail. Dr. Wihera also has an office in the same building. During that time, Dr. Wihera placed Respondent's mail in Respondent's office. As of June 2008, Dr. Wihera estimated there were nine banker's boxes of unopened mail in Respondent's office. Much of this mail came from the U.S. Patent and Trademark Office ("USPTO").

The building that houses Respondent's office has been sold. Dr. Wihera believed that Respondent's mail and client files were in jeopardy of being discarded by the new owner. Accordingly, the District Court of Jefferson County appointed Inventory Counsel. As part of those proceedings, the People requested that the District Court order Dr. Wihera to freeze Respondent's share of the proceeds generated from the sale of their building.

### The Philip Wyers Matter

Philip Wyers is the president and sole owner of Wyers Products Group, Inc. Respondent had been counsel for Mr. Wyers' company for the last ten years. His responsibilities included filing patent and trademark applications, contact with possible patent infringers, and the handling of patent infringement cases.

On July 26, 2007, Mr. Wyers remitted a payment of $5,000.00 to Respondent to retain an expert witness to aid him in a patent infringement case. On November 9, 2007, Mr. Wyers sent Respondent an additional $40,000.00 to pay the remainder of the expert's bill. Mr. Wyers later learned that the expert's reports were never filed in his case and that the expert was not paid for his work. Mr. Wyers made repeated attempts to contact Respondent beginning in February 2008. As of June 16, 2008, Respondent had failed to communicate in any way with Mr. Wyers, failed to account to Mr. Wyers for the $45,000.00 submitted by Mr. Wyers to Respondent to secure expert reports, and failed to secure the expert's report for use in Mr. Wyers' patent litigation. As a result of this conduct, Respondent violated Colo. RPC 1.1, 1.3, 1.4(a), 1.4(b) and 8.4(c).

### The Jennifer Kelly Matter

Jennifer Kelly is employed with Magic Carpet Ski Lifts, Inc. and Eagle Chase Investments, L.L.C. Ms. Kelly entrusted Respondent with ensuring that the corporations' trademarks remained valid, including renewing them and filing related reports by the appropriate deadlines.

On September 9, 2007, Ms. Kelly sent Respondent instructions to renew one of the corporations' trademarks along with a check for $750.00. This check later cleared the corporate account, but Respondent never filed the trademark renewal. Ms. Kelly later found out that a $200.00 late filing fee was required to keep the trademark alive, on top of the $750.00 originally owed.

Beginning in October 2007, Ms. Kelly made repeated attempts to contact Respondent regarding the status of the trademarks. As of June 16, 2008, she had not received a

phone call, letter, or email from Respondent. Ms. Kelly transferred her trademark matters to Respondent's former partner, Mr. Henson, due to lack of communication with Respondent. Ms. Kelly has since tried to retrieve her company's files from Respondent. However, all attempts at communication with Respondent regarding her files have gone unanswered. Respondent has not returned her company's $750.00. As a result of this conduct, Respondent violated Colo. RPC 1.1, 1.3, 1.4(a), 1.4(b) and 8.4(c).

### The Donald Sonntag Matter

Donald Sonntag is a Division Manager of ProSys Packaging Equipment ("ProSys"). ProSys designs and manufactures high-speed packaging machines for the pharmaceutical, cosmetic and chemical industries. ProSys' ability to patent its designs has been a key component in its competitive edge against foreign competitors. Mr. Sonntag and his company have been working with Respondent since 1989 and his work has included meeting deadlines to pay fees and submitting applications to the USPTO and foreign patent offices.

On August 6, 2007, ProSys instructed Respondent to file a patent application with a deadline of October 25, 2007. Respondent never filed this application. The deadline passed, as well as a six-month extension/grace period, and ProSys was thereafter unable to obtain patent coverage due to Respondent's negligence. This allows competitors of ProSys to copy their unique and innovative technology. As a result of this conduct, Respondent violated Colo. RPC 1.1, 1.3, 1.4(a) and 1.4(b).

### The Howard Bernstein Matter

Howard Bernstein is the president of LazorBlades, Inc. Respondent handled all patent work for this corporation. This work includes filing patent applications and ensuring specific and time sensitive deadlines are met.

Beginning in late 2007, Respondent stopped returning calls from Mr. Bernstein and his corporation. Mr. Bernstein became concerned that correspondence from the USPTO may be waiting unattended in Respondent's office. Missed deadlines in the application process can be fatal and can result in the abandonment of the patent, making it nearly impossible to recover. These types of situations can also cost Mr. Bernstein's company thousands of dollars in re-filing fees, if that option is even available. As a result of this conduct, Respondent violated Colo. RPC 1.1, 1.3, 1.4(a) and 1.4(b).

### The Ted Crawford Matter

Ted Crawford is a former client of Respondent. Mr. Crawford has made countless attempts to contact Respondent regarding his patent matters. The last time Mr. Crawford received any correspondence from Respondent was in October 2007, at which point Respondent told him he was asserting a lien over his file due to an unpaid balance. In response, Mr. Crawford requested that Respondent provide him with an accounting and invoice of his company's funds he had on retainer to pay for overseas patent fees. Respondent never provided an accounting or invoice to Mr. Crawford, leading Mr. Crawford to believe that Respondent has misused his company's retainer funds.

Mr. Crawford has since retained Mr. Henson, to represent him in his patent matters. However, Mr. Crawford needs his files from Respondent's office so the work on these matters can continue. Further, Mr. Crawford believes there are files located on Respondent's office computer, including notes and letters, which are also pertinent to his patents. Currently, there are three patents that are in danger of being abandoned. Abandoning any of these patents would result in irreparable harm on Mr. Crawford. As a result of this conduct, Respondent violated Colo. RPC 1.1, 1.3, 1.4(a) and 1.4(b).

### The William Zilm Matter

William Zilm, a former optometrist and now an inventor, is a former client of Respondent. Mr. Zilm hired Respondent to seek other patents and to maintain fees and licenses. The last communication Mr. Zilm had with Respondent was in Fall 2007. A lack of communication with Respondent led

Mr. Zilm to transfer his patent matters to Mr. Henson.

Many attempts have been made by Mr. Zilm and Mr. Henson's firm to retrieve his files and documents, including some original patent art, from Respondent's office. Despite these many requests, Respondent has failed to turn over his files. If Mr. Zilm is unable to promptly recover his documents, his patents could be abandoned causing irreparable harm. As a result of this conduct, Respondent violated Colo. RPC 1.1, 1.3, 1.4(a) and 1.4(b).

### The Wayne Arden Matter

Wayne Arden retained Respondent in 2001 to file and maintain patents and trademarks protecting Mr. Arden's medical devices. Respondent entered his appearance on Mr. Arden's behalf with USPTO and foreign patent offices and thus, Respondent's name and office address is the only contact information the USPTO had in relation to these devices. Accordingly, all correspondence, application renewals, fee requests, etc., were sent directly to Respondent on Mr. Arden's behalf.

Beginning in February 2008, Mr. Arden has been trying to contact Respondent, with no success, to check on the status of his legal matters and retrieve his client file. Respondent's telephone has now been disconnected and his office locked with the appearance of being abandoned. Respondent still has not withdrawn as attorney of record for Mr. Arden with the USPTO. As a result of this conduct, Respondent violated Colo. RPC 1.3, 1.4(a) and 1.4(b).

### The Mike Gonzalez Matter

Mike Gonzalez retained Respondent to represent his company, Quest Technologies, Inc., with regard to its international patents. In 2006, Respondent was specifically engaged to handle a patent application filed in South Korea. At that time, Mr. Gonzales paid a $500.00 retainer and later paid Respondent's billing invoices totaling approximately $3,500.00 for this legal matter. Although Respondent represented (via his billing statements), that he was working on the matter, Mr. Gonzales discovered that Respondent did not perform the work he was retained and paid to accomplish. As a result, Mr. Gonzales discovered that the patent expired in February 2007 "due to non reply" by Respondent.

Further, Mr. Gonzales has never received an accounting of the funds he provided to Respondent for this matter or a refund of these funds. Mr. Gonzales has made numerous requests to recover his company's client file from Respondent so he can determine what action should be taken on the South Korean patent, but Respondent refused to respond, or return the file to Mr. Gonzales. As a result of this conduct, Respondent violated Colo. RPC 1.1, 1.3, 1.4(a), 1.4(b), and 8.4(c).

### The David Gunn Matter

David Gunn retained Respondent in the summer of 2007 to represent his company in a number of patent/trademark issues. He provided Respondent with two retainer checks, one for $2,000.00 and one for $2,500.00 in July and August 2007. Both checks were deposited into Respondent's COLTAF account.

Mr. Gunn last spoke to Respondent in approximately December 2007. Since that date, Mr. Gunn has discovered that Respondent failed to complete the patent/trademark work he was retained and paid to complete. As a result, Mr. Gunn has lost his patent identified as U.S. Patent Application SN11/026,571.

Mr. Gunn has made numerous requests to recover his client file from Respondent so he can determine what action should be taken on his patents/trademark issues, but Respondent has failed to respond; Respondent has also refused to turn over Mr. Gunn's client file, or Mr. Gunn's Petriglass showcase, and drywall texture prototype hopper, nozzles and tube gun prototypes. Mr. Gunn is currently being sued in California over this lost patent and his inability to secure his file from Respondent has prejudiced his defense and caused him to be unable to fully respond to discovery as ordered by the court. As a result of this conduct, Respondent violated Colo. RPC 1.1, 1.3, 1.4(a), 1.4(b) and 8.4(c).

### The Dean Heizer Matter

In the summer of 2007, Mr. Henson left Respondent's firm to pursue his own L.L.C. In conjunction with starting his new firm, Mr. Henson sent an announcement letter advising clients that if they wanted to transfer their files, they should do so by sending a letter or file-transfer request to Respondent with a copy to Mr. Henson. Many clients completed such forms within thirty days of Mr. Henson's withdrawal. However, Respondent refused to transfer the client's files.

Through his counsel, Dean Heizer, Mr. Henson also sent numerous letters to Respondent indicating his clients' wishes to transfer their case to him, but Respondent failed to respond to most of these letters. Attached to the letters were written releases by the clients requesting that their files be immediately transferred to Mr. Henson. While Respondent eventually turned over some files, he refused to turn over all of the files for the clients that transferred to Mr. Henson's new firm and has failed to withdraw as their counsel with the U.S. and foreign patent offices handling their matters. In sum, Respondent refused to return twenty-six client files involving hundreds of separate legal issues, asserting vaguely that he may file a lien on these files. No liens have yet to be filed.

Further, in at least one instance, Respondent has refused to withdraw from representing, in federal court, a client that discharged him and transferred to Mr. Henson's firm, forcing Mr. Henson to file a motion to compel Respondent's withdraw from the case. As a result of this conduct, Respondent violated Colo. RPC 1.16(a).

### The Trust Account Notification Matters

On February 25, 2008, Respondent's bank, USBank, reported item number 5192 in the amount of $2,505.00 returned due to non-sufficient funds in his COLTAF account (# 1–591–0169–7534) on February 20, 2008. Apparently Respondent attempted to run item number 5192 through his COLTAF account a second time on February 25, 2008. As a result, on February 29, 2008, USBank again reported to the People that item number 5192 in the amount of $2,505.00 was returned due to non-sufficient funds in Respondent's COLTAF account.

Respondent's COLTAF records reveal that as of October 11, 2007, his COLTAF account balance was negative $30.31 and remained at a negative balance until forcibly closed by the bank on November 28, 2007. The source of the client funds missing from the COLTAF account include the Philip Wyers, Jennifer Kelly, Donald Sonntag, Mike Gonzales, and David Gunn matters discussed above. As a result of this conduct, Respondent violated Colo. RPC 8.4(c).

### The Randal Oxley Matter

In May 2007, David Larkin, an attorney working for Respondent's firm Martin & Henson, P.C., contacted Randal Oxley and solicited his services as an expert witness in the field of patent infringement. Mr. Oxley agreed and both he and Mr. Larkin executed the law firm's written expert agreement. Mr. Larkin also sent Mr. Oxley a retainer to cover eight hours of work. Finally, Mr. Larkin advised Mr. Oxley that his expert report was due on August 24, 2007.

Mr. Oxley completed his expert report on August 23, 2007. Mr. Oxley forwarded his bill for services to Molly Johnson, a staff member of Martin & Henson, P.C. Having not been paid, Mr. Oxley began calling Ms. Johnson on September 10, 2007, inquiring about the status of payment by the firm for his invoice. Ms. Johnson informed him that she would speak to Respondent about the status of the payment, but that she believed the firm was waiting for the client to provide a cost retainer to cover Mr. Oxley's invoice. Later, Mr. Larkin contacted Mr. Oxley and advised him that Mr. Larkin was leaving Martin & Henson, P.C. He stated that the firm would pay Mr. Oxley's bill. Ms. Johnson also told Mr. Oxley in October 2007 that she thought the client had provided the cost retainer so his bill would be paid soon.

Mr. Oxley continued to call Ms. Johnson, as well as Respondent, through the end of October, still awaiting payment. Then, in late October, Respondent called Mr. Oxley, assured him that he would be paid, but insisted that Mr. Oxley first forward the expert

report by November 5, 2007. Mr. Oxley replied on November 1, 2007 that he would not send the report without payment, first, to which Respondent promised to place a check for $5,000.00 in Federal Express that day and requested that Mr. Oxley place his report in Federal Express as well. Mr. Oxley did not send the report, and he never received the promised $5,000.00 check, or any additional funds, from Respondent, despite his multiple attempts to contact Respondent. Mr. Oxley is still owed $8,749.91 for his work on Respondent's client's behalf. As a result of this conduct, Respondent violated Colo. RPC 8.4(c).

## IV. SANCTIONS

■ The ABA Standards for Imposing Lawyer Sanctions ("ABA *Standards* ") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct.[4] In imposing a sanction after a finding of lawyer misconduct, the Court must first consider the duty breached, the mental state of the lawyer, the injury or potential injury caused, and the aggravating and mitigating evidence pursuant to ABA *Standard* 3.0.

■ Respondent's failure to participate in these proceedings leaves the Court with no alternative but to consider only the established facts and rule violations set forth in the complaints as well as the complaining witness statements of Philip Wyers, Jennifer Kelly, Ted Crawford, and David Gunn in evaluating these factors. The Court finds that Respondent violated duties owed to his clients, the public, and other duties owed as a professional.[5] Respondent specifically violated his duty to preserve the property of his clients, his duty to diligently perform services on their behalf, his duty to be candid with them during the course of the profes-

sional relationship, and his duty abide by the legal rules of substance and procedure which affect the administration of justice. The entries of default established that Respondent *knowingly* engaged in this conduct and caused actual financial and emotional harm to his clients when he abandoned them and converted their funds.

The Court finds that several aggravating factors exist in this case including a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding, refusal to acknowledge the wrongful nature of his conduct, substantial experience in the practice of law, and indifference to making restitution.[6] Due in part to the absence of any contradictory evidence, the Court finds clear and convincing evidence to support each aggravating factor. Respondent failed to participate in these proceedings and therefore presented no evidence in mitigation. However, the People conceded that Respondent has no prior disciplinary record consistent with ABA *Standard* 9.32(a).

■ The ABA *Standards* suggest that disbarment is the presumptive sanction for the most serious misconduct demonstrated by the admitted facts and rule violations in this case.[7] Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.[8] Disbarment is also generally appropriate when a lawyer abandons the practice, knowingly fails to perform services, or engages in a pattern of neglect that results in serious or potentially serious injury to a client.[9]

■ Colorado Supreme Court case law applying the ABA *Standards* also holds that disbarment is the presumptive sanction for conversion of client or third-party funds.[10]

---

4.  See *In re Roose,* 69 P.3d 43, 46–47 (Colo.2003).

5.  See ABA *Standards* 4.0, 5.0, and 7.0.

6.  See ABA *Standards* 9.22(b), (c), (d), (e), (g), (i) and (j).

7.  Respondent's misconduct also implicates ABA *Standards* 4.5, 4.6, 5.1, and 7.0.

8.  See ABA *Standard* 4.11.

9.  See ABA *Standard* 4.41.

10.  See e.g. *People v. Linville,* 114 P.3d 104 (Colo. 2005) (attorney acting as trustee); *People v. Motsenbocker,* 926 P.2d 576 (Colo.1996) (attorney acting as bar association treasurer); and *People v. McDowell,* 942 P.2d 486 (Colo.1997) (attorney holding funds for real estate transaction).

Knowing conversion or misappropriation of client money "consists simply of a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking." [11] Neither the lawyer's motive in taking the money, nor the lawyer's intent regarding whether the deprivation is temporary or permanent, are relevant for disciplinary purposes.[12] Significant mitigating factors may overcome the presumption of disbarment, however, Respondent failed to present any in this case.[13]

## V. CONCLUSION

One of the primary goals of our disciplinary system is to protect the public from lawyers who pose a danger to them. The facts established in the complaint, without explanation or mitigation, reveal the harm Respondent has caused his clients, the public, the legal system, and the profession. He knowingly failed to preserve the property of his clients, failed to diligently perform services on their behalf, failed to be candid with them during the course of the professional relationship, and failed to abide by the legal rules of substance and procedure which affect the administration of justice. Upon consideration of the nature of Respondent's misconduct, his mental state, the actual and potential harm he caused, and the absence of mitigating factors, the Court concludes that the ABA *Standards* and Colorado Supreme Court case law both support disbarment in this case.

## VI. ORDER

The Court therefore **ORDERS:**

1. TIMOTHY JOHN MARTIN, Attorney Registration No. 09083, is hereby **DISBARRED** from the practice of law and his name shall be stricken from the list of attorneys licensed to practice law in the State of Colorado. The disbarment **SHALL** become effective thirty-one (31) days from the date of this order in the absence of a stay pending appeal pursuant to C.R.C.P. 251.27(h).

2. Respondent **SHALL** pay full restitution to his former clients and/or the Attorneys Fund for Client Protection for amounts paid by the fund as a result of this consolidated case. The People may request specific amounts within fifteen (15) days of the date of this order.

3. Respondent **SHALL** pay the costs of these proceedings. The People shall submit a "Statement of Costs" within fifteen (15) days of the date of this order. Respondent shall have ten (10) days within which to respond.

---

11. *See People v. Varallo*, 913 P.2d 1, 11 (Colo. 1996).

12. *Id.* at 10–11.

13. *See In re Fischer*, 89 P.3d 817 (Colo.2004) (finding significant facts in mitigation).